IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **Omar Darwich**, an individual<br><br>Plaintiff,<br><br>*versus*<br><br>**Tobias & Associates LLC, *dba* GetMeHealthCare,**<br>a Florida Limited Liability Company<br><br>Defendant,<br><br>And<br><br>**Michael Tobias**<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.3:25-cv-157 LS<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

## INTRODUCTION

Plaintiff, Omar Darwich, pursuant to this Court's Order of July 21, 2025, files this First Amended Complaint against Defendant Tobias and Associates, dba GetMeHealthCare LLC, ("GetMe"), and Defendant Michael Tobias ("Tobias") to stop their illegal practice of placing unsolicited telephone calls in violation of the Telephone Consumer Protection Act ("TCPA") and related state laws. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

## PARTIES

1. Plaintiff Omar Darwich (hereinafter "Darwich") is an individual residing in or near El Paso, County Texas and was present for all causes of action complained of herein within El Paso, Texas.
2. Darwich may be served any relevant papers via email at: omar@darwichlegal.com
3. Defendant Getme is a limited liability company organized and existing under the laws of Florida and can be served via its registered agent Michael Tobias, 123 NW 13th St., 101, Boca Raton, Florida 33432.
4. Defendant Tobias is the principle owner and operator of Defendant Getme, and can be served at 123 NW 13th St., 101, Boca Raton, Florida 33432.
5. Defendant Getme and Defendant Tobias are referred hereinafter as "Defendants".

## JURISDICTION AND VENUE

6. This action is brought by Darwich pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").
7. This Court has jurisdiction over the subject matter of the claims under the TCPA claims pursuant to 47 U.S.C. § 227(g)(2). This Court further has jurisdiction over the subject matter of the claims pursuant to 27 U.S.C. § 1331, and has pendant jurisdiction over the subject matter of the claims under the Texas Business and Commerce Code and Fla. Stat. Ann § 501 pursuant to 28 U.S.C. § 1367.
8. This Court has specific personal jurisdiction over the Defendants as they authorized telemarketers to place calls on their behalf to Texas residents, derive or derived revenue from Texas residents, and sell goods and services to Texas residents and have otherwise availed themselves to the State of Texas.
9. Venue of this suit lies in the Western District of Texas, El Paso Division pursuant to 47 U.S.C. § 227(g)(4) because violations of the TCPA occurred within the Western District of Texas, as more specifically alleged below. Venue further lies in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of events giving rise to the claim alleged herein occurred within the Western District of Texas,

## STATEMENT OF FACTS

10. Darwich's cell phone (915)-333-5156 has been registered on the National Do-Not-Call Registry since November 16, 2024.

11. Darwich has never instructed the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry. Darwich has been on the National Do-Not-Call Registry at all times relevant to this Complaint.
12. Darwich's number is a residential number.
13. Darwich's telephone number is used for personal purposes and is not associated with business.
14. At all times relevant to this complaint, Darwich has been a resident of El Paso County, Texas.
15. Defendant Getme is a Florida LLC that serves as "insurance specialists".
16. Defendant Getme sells health insurance.
17. Defendant Getme advertises that they "are pioneers in providing health insurance **over the phone**". (emphasis added) (Exhibit A).
18. Defendant Tobias is the owner of Defendant Getme.
19. Defendant Tobias is a licensed insurance agent.
20. Defendant Tobias' Texas Insurance License Registration Number is 1266161.
21. In an effort to market and generate sales, Defendant Tobias markets Defendant Getme's services via telemarketing.
22. Defendant Tobias directed Defendant Getme to target residents, such as Plaintiff, in Texas.
23. Thus, Defendants purposefully sent phone calls to Texas residents, such as Plaintiff to solicit leads and clients.
24. In efforts to boost potential clients and generate mass leads, Defendants contracted with call centers, presumably located overseas.

25. Defendants authorize payments to these calling centers.

26. Defendants approve the scripts, qualifying questions, and manner in which these calling centers solicit.

**The Illegal Calls**

27. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone call unavailable for legitimate callers or outgoing calls, including emergency calls.

28. Additionally, Plaintiff suffered nuisance and annoyance. Plaintiff was forced to go to the unnecessary trouble of answering the calls, dealing with constant interruptions and distraction.

29. The true identity of the caller was never revealed in any of the identified illegal calls alleged below.

30. Rather, in the April 30, 2025, call (as further described below) after Darwich feigned interest in health insurance, he received an email communication that identified Defendant Getme.

31. Each call Darwich received contained a "spoofed" telephone number.

32. A "spoofed" telephone number is a number that a caller displays on their caller id that is not the actual number they are calling from.

33. 915 is the area code for the city in which Darwich resides (El Paso).

34. All of the calls contained the 915-area code.

35. On January 29, 2025, at 12:13PM, Darwich received a call from 915-751-7118.

36. The caller was soliciting health insurance by asking about Darwich's health insurance coverage through the marketplace.
37. Darwich believed the caller was of foreign nationality based on the accent of the caller.
38. Darwich also believed that the caller was calling from a foreign location based on the delay in connection and audio response time.
39. Darwich believed that the caller was calling from a calling center based on hearing overlapping background noises of other voices from the other end.
40. After hearing the solicitation for health insurance, Darwich hung up the phone.
41. Darwich received another call on March 19, 2025, from 915-247-2657.
42. As in the January 29, 2025, solicitation, Darwich believed the caller was of foreign nationality and calling from an overseas calling center.
43. As in the January 29, 2025, call, the caller asked Darwich if he had health insurance through the marketplace.
44. The caller identified himself as "Mark".
45. The caller then solicited Darwich to received "additional" "new" and "updated" benefits provided through subsidies through the marketplace.
46. Darwich told the caller "please never call this number again".
47. The caller said, "excuse me".
48. Darwich replied: "please just never call me again" and hung up.
49. On March 28, 2025, Darwich received a call from 915-642-4707.
50. The calls were identical in script and quality in the two above identified calls.
51. After hearing the solicitation for health insurance, Darwich hung up.

52. Darwich received three soliciting calls on April 8, 2025, from 915-877-3926, 915-272-5298, and 916-759-6783.
53. All three calls were solicitations for health insurance.
54. All three calls appeared to Darwich to originate from the same overseas call center.
55. Darwich hung up on each call after hearing what Darwich believed was the same "probe" or script on each call.
56. Each call began as an inquiry or discussion as to "health insurance through the marketplace".
57. This led Darwich to believe that they were from the same source.
58. Darwich received another call from 915-938-5217 on April 17, 2025.
59. The caller stated, "This is Daniel with healthcare how are you today".
60. The caller stated, "this is a short review call about your insurance, and I believe you already have insurance through the marketplace, right?"
61. As in the previously identified calls, the caller was soliciting health insurance.
62. Based on the accent of the caller, Darwich also believed that this was another overseas caller from an overseas call center.
63. Darwich stated "hey Daniel, please do not call me anymore" and hung up.
64. Darwich received a call from 915-741-2577 on April 28, 2025.
65. As in the above identified calls, the caller was following a script asking about health insurance through the marketplace.
66. As in the prior above identified calls, Darwich believed that the caller was calling from an overseas calling center.

67. Darwich hung up after hearing the same or similar script “My name is … I’m calling from health care benefits”.

68. On April 30, 2025, Darwich received a call from 915-226-0564.

69. The call began as the previously identified calls.

70. The caller asked if Darwich had health insurance from the marketplace.

71. Frustrated with the continuous calls, Darwich engaged Darwich engaged in the telephone conversation to discovery the true identity and source of the calls.

72. The caller asked Darwich a serious of qualifying questions included “do you have Medicaid, Medicare, Va, Tricare”.

73. The caller also asked for Darwich’s age.

74. The caller said “we are perfectly qualified to get the government free health plan at no cost to you”.

75. The caller asked for Darwich’s zipcode.

76. At some point after the qualifying questions, the caller stated that Darwich was “perfectly qualified to get the government free subsidized health insurance”.

77. The caller stated that he was going to bring in his “senior coordinator” who would be the best person to help Darwich.

78. The caller told Darwich to tell them that Darwich did not have health insurance so that they could get me 0$ health insurance.

79. Without any break or notice in the call a new voice appeared that stated “hi this is Carl Edwards…”.

80. At this point in time Darwich believed he was still speaking with a foreign individual working from a call center.

81. Darwich based this on the accent of the new speaker and the manner in which they entered the call.
82. "Carl Edwards" also asked Darwich if he had health insurance through the marketplace.
83. He stated that they would help Darwich get a 0$ health insurance plan.
84. He continued to ask Darwich qualifying questions such as age.
85. "Carl Edwards" also asked if Darwich had health insurance through Medicaid, Medicare, VA, or Tricare.
86. "Carl Edwards" also asked for Darwich's zip code.
87. He asked for Darwich's first and last name.
88. He asked how Darwich filed his tax returns.
89. Among other questions he also asked for Darwich's date of birth.
90. Darwich went along with the call, again, only in the hopes to identify the true source of the calls.
91. "Carl Edwards" after asking his qualifying questions stated that Darwich was perfectly qualified to receive the benefits.
92. "Carl Edwards" stated that he was going to quickly bring in the licensed agent who would pull up Darwich's profile and provide Darwich with all of the benefits.
93. "Carl Edwards" then attempted to connect Darwich to another agent.
94. The call did not immediately connect.
95. After a few brief moments "Carl Edwards" stated that sometimes the agents were busy.
96. Darwich told "Carl Edwards" that he wanted him to call him on a different line.
97. "Carl Edwards" stated he would call him back and took the new number from Darwich.
98. The number was 915-444-0380.

99. “Carl Edwards” said that he would call Darwich back at that number.

100. True to his statement, Carl Edwards called Darwich back at that number.

101. Darwich was then connected to Defendant Getme’s American based agent or employee.

102. While conducting the call, as a part of his investigation, Darwich received an email from Defendant Getme.

103. Specifically, Darwich received an e-signature request from Defendant Getme. *Exhibit* 5. (An excerpt has been attached below).


Document e-Signature TCPA/Darwich v. GetHealthCare ×
mail@getmehealthcare.com
to me
Apr 30, 2025, 10:31 AM
**Images in this message are hidden.** This message appears suspicious. Don't show the images unless you trust the sender and the message.
Show images
Report spam

GetMeHealthcare e-Signature.

This email is sent to you to verify your information.

**Name**: Omar Darwich
**Code**: 7745B20C223C4369AF042DC7E1715531

Please click the link below to verify your information:

Verify

If the button above doesn't work, paste this into your browser:
https://aca-agent.thegorillahub.com/PDF/DocumentSign?c=R7vjN5KaQbNOTc8bp9QROypNyRWJ%2bBWHWf%2b3NOQFEX2%2b%2b2ToFcV5GWcuxwdHBNjTEUdxTu4o4iAUu%2fiszm3xlOQF2TsHK9OrZnGYLLrTVPHBQwWFyhHeZZk6pNwCSC5T

{THIS_YEAR} © Aurora.

104. The email explicitly stated “GetMeHealthcare” e-signature.

105. The email came from the sender: mail@getmehealthcare.com.

106. At this point in time, Darwich had never heard of this company.

107. At this point in time, Darwich had no existing relationship with this company.

108. Moreover, at no point in any of the above identified calls, did the overseas calling agents state they were calling on behalf of "GetMeHealthcare".

109. This email was sent to Darwich's personal email address that Darwich provided to the caller: mrdrwch@gmail.com.

110. The email further contained an attachment that had the title "Gorilladocs".

111. Said attachment appeared to contain the information Darwich provided during the call. *Exhibit B*.

112. This information included Darwich's date of birth, his phone number, and address i.e., all of the answers to the qualifying questions that Darwich was asked. *Id.*

113. The email sent to Darwich as a result of that call contained a hyperlink button that said "Verify". *Exhibit D*.

114. It also included a hyperlink to paste into a user's browser if the button did not work. *Id.*

115. The hyperlink took Darwich to what appeared to be the same attachment that came with the email.

116. This was an application that included a signature block for Darwich.

117. The application would have authorized "ACA Agent" to serve as the health insurance agent or broker for Darwich and his household.

118. Darwich was never told who or what an "ACA Agent" was.

119. The email also included Darwich's name and a "Code". *Exhibit D*.

120. Upon information and belief, this code would allow Defendants to track Darwich's application.

121. Notwithstanding the above, Darwich copied the "getmehealthcare.com" portion from the senders email (mail@getmehealthcare.com).

122. Darwich then used the Google Chrome and pasted "getmehealthcare.com" into the search bar.

123. Darwich was directed to Defendant Getme's home webpage. *Exhibit A*

124. Defendant Getme's website identified an address of 123 NW 13th St Suite 101, Boca Raton Fl 33432.

125. Darwich also searched "getmehealthcare" in google.

126. Darwich saw that "GetMeHealthcare" was identified in the google search as an insurance agency and technology platform. *Exhibit C*.

127. The Google Business Listing also had (and has) an identical address for "GetMeHealthcare" as found on Defendant Getme's website.

128. Between that information and receiving the Defendant's e-signature request after the call with "Carl Edwards", Darwich knew that Defendant Getme was responsible for the violating calls.

129. Every call was almost identical in script and style.

130. Every call came from a foreign caller at a call center.

131. When Darwich finally, after significant frustration and repeated do not call requests, played along with the calls, Darwich was connected to an agent of Defendant GetMe and subsequently received an e-signature request from Defendant GetMe.

132. The request was for Darwich to authorize (in some manner or form) Defendant GetMe to serve as a agent or broker on behalf of Darwich to enroll Darwich in some type of health insurance plan. *Exhibit B*.

133. All solicitation calls were attempting to solicit Darwich for health insurance.

134. On April 30, 2025, as identified above, Darwich received the violating call that Darwich feigned interest in to discover the identity of the callers.

135. Defendants, through their expertise, easily and quickly connected Darwich to Carl Edwards who then, quickly and swiftly connected Darwich with Defendants American based employee or agent.

136. It was connected and streamlined.

137. It was a singular operation that was trained on.

138. The overseas agents were not acting on their own direction or initiative.

139. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

140. Darwich has never provided his prior express written consent to receive any of the calls.

141. The calls were nonconsensual encounters that were not made for emergency purposes.

142. The calls were placed while knowingly ignoring the national do-not-call registry.

143. Numerous calls were made after explicit do not call requests were made.

144. The calls were placed without training their agents/employees on the use of an internal do-not-call policy.

145. The calls were aggravating, frustrating, time consuming, and annoying.

146. Even more frustrating, was that within about 10 minutes of the call, Darwich received to his personal email address an email stating that Darwich had successfully submitted his 2025 health insurance marketplace application. *Exhibit E*.

147. This email came from notices@healthcare.gov at 10:38AM on April 30, 2025.

148. The e-signature request from Defendant Getme came at 10:31AM on April 30, 2025.

149. Darwich explicitly told Defendant Getme's agent that he did not wish to move forward.

150. Nonetheless, Darwich received confirmation that an application was submitted.

151. At no point in time did Darwich ever sign the e-signature request that Defendant Getme sent to Darwich.

152. At no point in time has Darwich ever authorized Defendants to apply for health insurance on his behalf.

153. Prior to this incident, Darwich has not submitted an application for health insurance through the marketplace in at least five years.

154. At no point after the call with Defendant Getme's American agent or employee did Darwich go and apply for a health insurance policy through the marketplace.

155. Darwich has already informed the marketplace was not submitted by his instruction and the application has been revoked/ rejected.

156. Upon information and belief, Defendant Getme's agent submitted the application for some financial gain or benefit.

157. Lastly, in preparing this lawsuit, Darwich attempted to call back the callers from the above identified calls and discovered that each line was disconnected or unavailable.

**The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227**

158. Darwich realleges paragraphs one through one hundred and fifty-seven and incorporates them herein as if set in forth here in full.

159. The TCPA restricts the use of telemarketing tactics that could be seen as a nuisance and an invasion of privacy to consumers. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

160. According to the Federal Communications Commission ("FCC"), "[U]n wanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls".

161. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorney generals" in enforcing federal law.

162. Pursuant to 47 U.S.C. § 227(c)(1), the FCC adopted regulations establishing a national "do not call" database and prohibiting any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database, which regulations are set forth at 47 C.F.R § 64.1200(c), and promulgate in relevant part:

> No person or entity shall initiate any telephone solicitation to: …
>
> (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government…

163. Additionally, the TCPA, at 47 U.S.C. §227(c)(5), provides for a private right of action, as follows:

> Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation,** whichever is greater, or

(C) both such actions. (emphasis added).

**The FTSL, at Fla. Stat. § 501**

164. Darwich realleges paragraphs one through one hundred and sixty-two and incorporates them herein as if set in forth here in full.

165. The FTSL, at Fla. Stat. § 501.059, states in relevant part as follows:

> (2) Any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number shall identity himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation…
>
> (b) It shall be unlawful for nay person who makes telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call… If a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which telephonic sales call was placed…
>
> (10)(a) A called party who is aggrieved by a violation of this section may bring an action to:
> 1. Enjoin such violation.
> 2. Recover actual damages of $500, whichever is greater.
> (b) If the Court finds that the Defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available in paragraph (a)…

**The Texas Business and Commerce Code § 302.101**

166. Darwich realleges paragraphs one through one hundred and sixty five and incorporates them herein as if set in forth here in full.

167. Section 302.101 of the Texas Business and Commerce Code prohibits a seller from "mak[ing] a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made.

168. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

169. A person who violates this chapter is subject to a civil penalty of not more than $5,000 for each violation including all reasonable costs of the prosecuting action. Tex. Bus. & Comm. 302.302(a), (d).

**Common Law Fraud**

170. Darwich realleges paragraphs one through one hundred and sixty-nine and incorporates them herein as if set in forth here in full.

171. Texas courts recognize a variety of fraud related claims.

172. These claims include but are not limited to fraudulent misrepresentation.

173. After engaging in the April 30, 2025, call to discover the identity of the call source, Darwich expressly and explicitly told the caller that he was not interested and would call back if he changed his mind.

174. During the call, Darwich was emailed a document for electronic signing using a program called "Gorilla Docs".(Exhibit B).

175. This document was emailed to Darwich on April 30, 2025 at 10:31AM.

176. At no point in time did Darwich sign this document.

177. At no point in time did Darwich submit his electronic signature to the Defendants.

178. However, minutes after disconnecting the call, Darwich received an email at 10:38AM (same day) from notices@healthcare.gov.

179. This email stated "Application Submitted: Pick your plan". (Exhibit e).

180. Defendants had their agent submit Darwich's application without Darwich's consent or in the alternative, forged Darwich's electronic signature and submitted the application.

**Personal Liability of Defendant Tobias**

181. Darwich realleges paragraphs one through one hundred and eighty and incorporates them herein as if set in forth here in full.

182. Defendant Tobias is no stranger to TCPA and violations.

183. Defendant Tobias has been sued at least two times in separate TCPA actions. (*Hill v. Tobias & Associates*, *et al.*, and *Dobronski v. Tobias & Associates Inc., et al*.).

184. Rather than adhere to TCPA regulations, Defendant Tobias explicitly directs and manages his company Defendant Getme to act deceptively.

185. In fact, Defendant Tobias goes as far as ensuring that Defendant GetMe's overseas telemarketers do not identify Defendant Getme or Defendant Tobias.

186. Instead, Defendant Tobias instructs them to state vague and fictious names such as "Health Benefits".

187. Defendant Tobias is aware of the TCPA and its regulations.

188. Defendant Tobias writes scripts that his agents use on illegal calls.

189. Defendant Tobias directs the telephone solicitors on which states to call and during which hours.

Defendant Tobias knowingly and willfully violates the TCPA because it benefits him.

Defendant Tobias is the namesake of Defendant GetMe and the sole owner, operator, and decision maker of Defendant GetMe.

Defendant Tobias' history and continued violations shows that he refuses to take any action to stop or curtail the unlawful sales practices and illegal unauthorized phone calls.

"If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity*."* *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

At all times material to the Complaint, acting alone or in concert with others, Defendant Tobias has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant GetMe including the acts or practices set forth in this Complaint.

190. Defendant Tobias should be held jointly and severally liable for the violations alleged herein.

**<u>First Cause of Action</u>:**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(Against All Defendants)**

191. Darwich realleges paragraphs one through one hundred and ninety and incorporates them herein as if set forth here in full.

192. Darwich's telephone number is registered on the Federal Do Not Call Registry.

193. Defendants placed unsolicited phone calls to Darwich's DNC registered telephone without having his prior written consent to do so.

194. Defendants' actions agents constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

195. As a result of its unlawful conduct, Defendants repeatedly invaded Darwich's personal privacy, causing him to suffer damages.

196. Darwich is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

197. Defendants made numerous calls after explicit Do Not Call requests.

198. Said calls were willful and/or knowing as all calls were made after Darwich made an explicit initial do not call me request.

199. Darwich also seeks a permanent injunction prohibiting Defendants from making telemarketing solicitations to his number.

**<u>Second Cause of Action:</u>**
**Violation of the FTSL**
**(Against All Defendants)**

200. Darwich realleges paragraphs one through one hundred and ninety nine and incorporates them herein as if set forth here in full.

201. Each of the calls was in violation of the FTSL: specifically Fla. Stat. § 501.059(2), as Defendant or Defendants' agent made an unsolicited telephonic sales call to a residential telephone number and did not identify himself by his or her true first and last names and the business immediately upon making contact by telephone with the person who was the object of the telephone solicitation.

202. Additionally, Defendants caused a telephonic sales call to be made to fail to transmit the originating telephone number and the name of the telephone solicitor to any caller identification service in use by a recipient of the telephonic sales call.

203. Defendants used spoof numbers rather than their actual numbers.

204. Lastly Darwich was unable to connect to any of the telephonic numbers that called him in violation of the FTSL.

**<u>Third Cause of Action</u>:**
**Violations of The Texas Business and Commerce Code § 302.101**
**(Against All Defendants)**

205. Darwich realleges paragraphs one through one hundred and two hundred and four and incorporates them herein as if set forth here in full.

206. Defendants solicited Darwich without having a valid Texas Solicitation Registration as required by section 302 of the Texas Business and Commerce Code.

207. Section 302.101 of the Texas Business and Commerce Code requires a seller who makes a telephone solicitation from a location in this state or to a purchaser located in this state to hold a registration certificate.

208. Defendants were soliciting Darwich, a Texas Resident, to act as a broker on behalf of Darwich.

209. In other words, Defendants were soliciting Darwich for a service.

210. A violation of this chapter is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17. *Sec 302.303* Tex. Bus. & Comm.

211. A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce this chapter. *Id*. At (b).

212. As such Defendants may be liable for up to $5,000.00 per violation including costs of this action.

**Fourth Cause of Action:**
**Common Law Fraud**
**(Against All Defendants)**

213. Darwich realleges paragraphs one through one hundred and two hundred twelve and incorporates them herein as if set forth here in full.

214. Darwich never consented nor signed any authorization for Defendants to submit an application on behalf of Darwich to any health insurance provider.

215. Notwithstanding the above, shortly after the April 30, 2025, Darwich received an email stating that he had submitted an application.

216. Defendants are licensed insurance agents have an obligation to adhere to state and federal regulations.

217. Defendants cannot submit applications absent express and explicit authorization.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Omar Darwich, prays for the following relief:

A. An order declaring that the Defendants actions, as set out above, violate 227(c) of the TCPA;

B. An order declaring that the Defendants actions, as set out above, violate the TCPA willfully and knowingly;

C. An award of $1,500.00 per call in statutory damages arising from the TCPA §227(c) for each intentional violation and $500 for each unintentional violation;

D. An award of $1,500 per call (13) in statutory damages arising from each violation of the FTSL and $500 for each unintentional violation;

E. An award of $5,000.00 per call (13) in statutory damages arising from each violation of the Texas Business and Commerce Code § 302.101;

F. An injunction requiring Defendants to cease sending all unlawful calls;

G. An order, ordering Defendants to rescind Darwich's health care application and clarify that Darwich did not submit an application;

H. An award of any and all damages Darwich has or may suffer as a result of Defendants' fraudulent representation and application;

I. An injunction barring Defendants for soliciting for health insurances to any individual pending this litigation;

J. An award of reasonable fees and costs; and

K. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated this 25th day of July 2025.

Respectfully Submitted,

__/Omar F. Darwich/ ____________
Omar F. Darwich -Pro Se

6090 Surety Dr., #415
El Paso, TX 79935
(915) 671-2221
omar@darwichlegal.com

## CERTIFICATE OF SERVICE

I certify by signature below, that the foregoing document was served via this Court's electronic filing system on this 25th day of July 2025

Dated this 25th day of July 2025.

Respectfully Submitted,

__/Omar F. Darwich/ ____________
Omar F. Darwich -Pro Se

6090 Surety Dr., #415
El Paso, TX 79935
(915) 671-2221
omar@darwichlegal.com